UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————X
MT. HAWLEY INSURANCE COMPANY,

          Plaintiff,

-against-

GIM CONSTRUCTION, INC.,

          Defendant.
———————————————————————X

Civil Action No.

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, MT. HAWLEY INSURANCE COMPANY ("Mt. Hawley" or "Plaintiff"), by way of Complaint for Declaratory Judgment against Defendant, GIM CONSTRUCTION, INC. ("GIM" or "Defendant"), alleges as follows:

1. This action arises out of a controversy between the parties regarding coverage under the commercial general liability policy No. MGL0193913 (the "Policy") issued by Mt. Hawley to GIM Construction Inc.

2. Plaintiff Mt. Hawley brings this action seeking a declaratory judgment that Plaintiff is not obligated to defend or indemnify GIM under the Policy in connection with GIM's demand for insurance coverage for three (3) underlying actions involving alleged property damage resulting from a water intrusion/leak claimed to be caused by construction work at an apartment owned by Lorcan and Nydia Shannon, styled as: (1) *Fireman's Fund Insurance Company a/s/o Seward Park Housing Corp. v. Darby Construction Services LLC et al.*, Index No. 151337/2023, pending in the Supreme Court, New York County (the "Seward Park Lawsuit"); (2) *Allstate Insurance Company a/s/o Tiffany Streifel v. Darby Construction Services LLC et al.¸* Index No. 154931/2024, pending in the Supreme Court, New York County (the "Streifel Lawsuit"); and (3) *State Farm Fire and Casualty Company a/s/o Richard Van Benschoten v. Darby Construction*

*Services LLC et al.,* Index No. 714206/2025, pending in the Supreme Court, Queens County (the "Van Benschoten Lawsuit") (collectively, the "Underlying Actions").

## THE PARTIES

3. Plaintiff, Mt. Hawley, is an insurance company incorporated in the State of Illinois, with its principal place of business located in the State of Illinois.

4. Plaintiff Mt. Hawley is authorized to transact the business of insurance in the State of New York on a non-admitted basis and is authorized to issue insurance policies in New York as an excess and surplus lines insurer.

5. Upon information and belief, Defendant GIM is, and was at all relevant times, a corporation organized under the laws of New York, with its principal place of business located in New York.

## JURISDICTION AND VENUE

6. This dispute is between citizens of different States, regarding an amount in controversy exceeding the value of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs. Diversity jurisdiction therefore is proper pursuant to 28 U.S.C. §1332.

7. In this regard, GIM seeks coverage for three (3) Underlying Actions related to claimed property damage allegedly resulting from the construction work at the Shannon Premises. In the Seward Park Lawsuit, the underlying plaintiff seeks damages in the amount of $151,177.64. In the Streifel Lawsuit, the underlying plaintiff seeks damages in the sum of $37,472.05. In the Van Benschoten Lawsuit, the underlying plaintiff seeks damages in the sum of $97,315.06.

8. Venue is proper under 28 U.S.C. §1391(b)(2) as a substantial part of the events or omissions giving rise to this dispute occurred in this judicial district.

9. This is a case or controversy involving insurance policies that were either issued in this judicial district or covered risks in this judicial district, thereby permitting declaratory judgment under 28 U.S.C. § 2201.

## THE UNDERLYING ACTIONS

*The Seward Park Lawsuit:*

10. On or about February 10, 2023, Fireman's Fund Insurance Company ("Fireman's Fund") filed an action, as subrogee of Seward Park Housing Corp. ("Seward Park"), in the New York Supreme Court, New York County, Index No. 151337/2023 against Defendants Darby Construction Services LLC ("Darby"), GIM Construction, Inc., CM Plumbing, Inc ("CM Plumbing"), Lorcan Shannon and Nydia Shannon for property damages to the building Seward Park allegedly owned located at 268 E. Broadway, New York, NY (the "Seward Park Building").

11. In the Seward Park Complaint, Fireman's Fund alleges, among other things, that Defendants Darby, GIM and CM Plumbing were contractors that performed work on the apartment in the Seward Park Building, owned by Lorcan and Nydia Shannon, 268 East Broadway, Apt A606, New York, NY (the "Shannon Premises"). Fireman's Fund alleges that on or about August 8, 2022, the work, labor and services performed by and on behalf of the defendants at the Shannon Premises involved the removal of walls or portions of walls, and that while the wall(s) was being removed it fell and hit a cold-water supply line causing it to break. This allegedly resulted in water flowing in and through the Shannon Premises as well as into other portions of the Seward Park Building, causing damage thereto. Fireman's Fund asserts that the property damages were caused by defendants' negligence in the performance of the construction work at the Shannon Premises and seeks damages in the amount of $151,177.64 for which Fireman's Fund allegedly made

payment to Seward Park, less a policy deductible in the amount of $50,000.00. A true and accurate copy of the Complaint as filed in the Seward Park Lawsuit is annexed hereto as **Exhibit A**.

12. On June 5, 2023, Defendant Darby filed its Answer to the Complaint in the Seward Park Lawsuit, generally denying the allegations, raising various affirmative defenses, and asserting crossclaims against Defendants GIM, CM Plumbing, and the Shannons for contribution, common law and contractual indemnification.

13. On June 12, 2023, Defendant GIM filed its Answer to the Complaint in the Seward Park Lawsuit, generally denying the allegations, raising various affirmative defenses, and asserting crossclaims against Defendants Darby, CM Plumbing, and the Shannons for contribution, common law and contractual indemnification, and breach of contract for failure to procure insurance coverage.

14. On July 21, 2023, Defendants Lorcan and Nydia Shannon filed their Answer to the Complaint in the Seward Park Lawsuit, generally denying the allegations, raising various affirmative defenses, and asserting crossclaims against Defendants Darby, CM Plumbing, and GIM for contribution, common law and contractual indemnification, and breach of contract for failure to procure insurance coverage.

15. On March 26, 2024, Defendant CM Plumbing filed their Answer to the Complaint in the Seward Park Lawsuit, generally denying the allegations, raising various affirmative defenses, and asserting crossclaims against Defendants Darby, GIM, and the Shannons for contribution, common law and contractual indemnification, and breach of contract for failure to procure insurance coverage.

16. On December 18, 2024, Defendant CM Plumbing filed a motion in the Seward Park Lawsuit to consolidate the Streifel Lawsuit, discussed below, with the Seward Park Lawsuit on the grounds that both actions involve common questions of law and fact.

17. On March 14, 2025, the Court granted the Motion for consolidation of the Seward Park Lawsuit and Streifel Lawsuit for discovery and trial.

18. On July 17, 2025, Defendant CM Plumbing filed a motion in the Seward Park Lawsuit to consolidate the Van Benschoten Lawsuit, discussed below, on the grounds that these two lawsuits and the Streifel Lawsuit all arise out of subrogation claims for property damage stemming from the work at the Shannon Premises. No decision has been made on this motion to date.

*The Streifel Lawsuit:*

19. On or about May 28, 2024, Allstate Insurance Company ("Allstate") filed an action, as subrogee of Tiffany Streifel, in the New York Supreme Court, New York County, Index No. 154931/2024 against Defendants Darby Construction Services LLC, GIM Construction, Inc., CM Plumbing, Inc, Lorcan Shannon and Nydia Shannon for property damages to her condo located at 268 E. Broadway, Apt. A107, New York, NY (the "Streifel Premises").

20. In the Streifel Complaint, Allstate alleges that or about August 8, 2022, the Streifel Premises were damaged as a result of the Defendants' negligence related to the construction work at the Shannon Premises leading to a water intrusion/leak. Allstate seeks damages in the amount of $37,472.05 as subrogee of Tiffany Streifel pursuant to the payment of insurance under the policy it issued her. A true and accurate copy of the Complaint filed in the Streifel Lawsuit is annexed hereto as **Exhibit B**.

21. On or about August 27, 2024, Defendant CM Plumbing filed its Answer to the Complaint in the Streifel Lawsuit, generally denying the allegations, raising various affirmative defenses, and asserting crossclaims against Defendants Darby, GIM, and the Shannons for common law and contractual indemnification, contribution, and breach of contract for failure to procure insurance.

22. On or about September 18, 2024, Defendant Darby filed its Answer to the Complaint in the Streifel Lawsuit, generally denying the allegations, raising various affirmative defenses, and asserting crossclaims against Defendants Darby, GIM, and the Shannons for common law and contractual indemnification, and contribution.

23. On or about October 7, 2024, Defendants Lorcan and Nydia Shannon filed their Answer to the Complaint in the Streifel Lawsuit, generally denying the allegations, raising various affirmative defenses, and asserting crossclaims against Defendants Darby, GIM, and the Shannons for common law and contractual indemnification, and contribution.

24. On or about January 29, 2025, Defendant GIM filed its Answer to the Complaint in the Streifel Lawsuit, generally denying the allegations, raising various affirmative defenses, and asserting crossclaims against Defendants Darby, CM Plumbing, and the Shannons for common law and contractual indemnification, contribution, and breach of contract for failure to procure insurance.

*The Van Benschoten Lawsuit:*

25. On or about May 16, 2025, State Farm Fire and Casualty Company ("State Farm") filed an action, as subrogee of Richard Van Benschoten, in the New York Supreme Court, Queens Count, Index No. 714206/2025 against Defendants Darby Construction Services LLC, GIM Construction Group, Inc. S/H/A GIM Construction, Inc., CM Plumbing, Inc., Lorcan Shannon and

Nydia Shannon for property damages to his condo located at 268 E. Broadway, Apt. A406, New York, NY 10002 (the "Van Benschoten Premises").

26. In the Van Benschoten Complaint, State Farm alleges that or about August 8, 2022, the Van Benschoten Premises were damaged as a result of the Defendants' negligence related to the construction work at the Shannon Premises leading to a water intrusion/leak. State Farm seeks damages in the amount of $97,315.06 as subrogee of Richard Van Benschoten pursuant to the payment of insurance under the policy it issued him. A true and accurate copy of the Complaint filed in the Underlying Van Benschoten Lawsuit is annexed hereto as **Exhibit C**.

## CONTRACTS/AGREEMENTS

27. On or about February 1, 2022, Lorcan Shannon and/or Nydia Shannon, the owners of the Shannon Premises, hired GIM as the general contractor for a renovation project in their apartment (the "Project").

28. Upon information and belief, Lorcan and Nydia Shannon's retention of GIM as general contractor for the Project at the Shannon Premises was not memorialized in a formal written agreement.

29. GIM held a supervisory role for the Project and did not complete any actual construction work at the Shannon Premises.

30. GIM did not hire any of the subcontractors for this Project.

31. Upon information and belief, Lorcan and Nydia Shannon retained all of the contractors and subcontractors for this Project.

32. GIM left the Project sometime after August 2022.

33. On or about February 1, 2022, Nydia Shahjahan and Lorcan Shannon entered into an agreement with Seward Park Housing Corporation related to the Shannons' request for

permission to install equipment and/or make alterations to their apartment, the Shannon Premises (the "Seward Park Agreement"). A true and accurate copy of the Seward Park Agreement is annexed hereto as **Exhibit D.**

34. Defendants Lorcan and Nydia Shannon retained Defendant Darby for work on the Project at the Shannon Premises pursuant to two written agreements, a Construction Manager Advisor Services Agreement, dated July 15, 2022, and a Contractor Agreement, dated July 16, 2022. Both contracts relate to the residential renovation of the Shannon Premises.

35. Under the Contractor Agreement, Darby, as contractor, was to perform the portion of the Project requiring demolition services according to the approved Department of Building construction drawings dated December 9, 2021, by the Architect for the Project. A copy of the Contractor Agreement is annexed hereto as **Exhibit E.**

36. Under the Construction Manager Adviser Services Agreement, Darby as Construction Manager, which included service coordination, was to coordinate its services with those services provided by the Owner, the Architect, the Contractors, and the Owner's other consultants. A true and accurate copy of the Construction Manager Advisor Services Agreement is annexed hereto as **Exhibit F**.

37. On or about August 4, 2022, Lorcan Shannon retained Defendant CM Plumbing as "Contractor", pursuant to a written agreement for the residential renovation of the Shannon Premises. Per the agreement, CM Plumbing was to perform all work and furnish all supervision, labor, materials, tools, equipment, materials, supplies and any other things necessary for the construction and completion of the work related to plumbing. A true and accurate copy of the CM Plumbing Agreement is annexed hereto as **Exhibit G.**

## MT. HAWLEY POLICY

38. Mt. Hawley issued Commercial General Liability Policy No. MGL0193913 to GIM Construction Inc., effective for the policy period of February 15, 2022 to February 15, 2023. A true and accurate copy of the Mt. Hawley Policy is annexed hereto as **Exhibit H**.

39. The Policy includes the following **EXCLUSION – NON-HIRED CONTRACTORS** Endorsement, Form CGL 481 (04/17) as relevant here:

*EXCLUSION – NON-HIRED CONTRACTORS*

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*This insurance does not apply to "bodily injury" or "property damage" arising out of work or other operations by any contractor (including, but not limited to, general contractors, subcontractors, any other trade contractors, and suppliers) not hired or contracted by you or, not hired or contracted by a contractor that you have hired.*

40. The Endorsement precludes coverage for any "property damage" arising out of work or other operations by any contractor not hired or contracted by GIM or not hired or contracted by a contractor GIM has hired.

41. All contractors and subcontractors performing work on the Project at the Shannon Premises were hired by the owner of the Premises, Lorcan Shannon and/or Nydia Shannon, or another contractor the Shannons retained.

42. GIM did not retain any contractors or subcontractors on this Project.

43. GIM's role on the Project was limited to that of a general contractor with a supervisory role and GIM did not perform any actual construction work at the Shannon Premises.

44. Based on the foregoing, coverage for the Underlying Actions for GIM is excluded pursuant to the Non-Hired Contractors Exclusion as the property damage alleged was not the result of GIM's work at the Shannon Premises or the work of any contractors or subcontractors hired or contracted by GIM.

45. The Policy also includes the following **BREACH OF CONTRACT EXCLUSION** by Endorsement, Form CGL 350 (08/09):

*This insurance does not apply, nor do we have a duty to defend any claim or "suit" for "bodily injury," "property damage," or "personal and advertising injury" arising directly or indirectly out of the following:*

a. *Breach of express or implied contract;*

b. *Breach of express or implied warranty;*

c. *Fraud or misrepresentation regarding the formation, terms or performance of a contract; or*

d. *Libel, slander or defamation arising out of or within the contractual relationship.*

46. In the Underlying Actions, the Co-Defendants have asserted cross-claims against GIM for breach of contract. Coverage for such claims is excluded pursuant to the above Breach of Contract Exclusion.

47. The Policy also includes the following Coverage A Insuring Agreement for "Bodily Injury" and "Property Damage":

*SECTION I – COVERAGES*
*COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

1. ***Insuring Agreement***

   a.   *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:*

   *(1)   The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and*

   *(2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.*

   *No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.*

    **b.**    *This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:*

        *(1)*    *The "bodily injury" or "property damage"*

            *(a)*    *Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or*
            *(b)*    *Arises out of the project or operation shown in the Schedule.is caused by an "occurrence" that takes place in the "coverage territory";*

        *(2)*    *The "bodily injury" or "property damage" occurs during the policy period; and*

        *(3)*    *Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.*

48.    The Policy includes the following definitions relevant to the Coverage A Insuring Agreement:

    *13.*    *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

        *\*\*\**

    *17.*    *"Property damage" means:*

        *a.*    *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*

        *b.*    *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

    *For the purposes of this insurance, electronic data is not tangible property.*

    *As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.*

    *\*\*\**

49. The Following Exclusions apply to preclude coverage under the Coverage A Insuring Agreement where applicable:

**SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

*2.  Exclusions:*

*This insurance does not apply to:*

*\*\*\**

   *b.  Contractual Liability*

   *"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:*

     *(1)  That the insured would have in the absence of the contract or agreement; or*

     *(2)  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:*

       *(a)  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and*

       *(b)  Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.*

*\*\*\**

   *j.  Damage To Property*

   *"Property damage" to:*

*\*\*\**

     *(5)  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or*

     *(6)  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

> *Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.*
>
> *Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products completed operations hazard".*

- l. **Damage To Your Work**

  > *"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".*
  >
  > *This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.*

- m. **Damage To Impaired Property Or Property Not Physically Injured**

  > *"Property damage" to "impaired property" or property that has not been physically injured, arising out of:*
  >
  > *(1)   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or*
  >
  > *(2)   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.*
  >
  > *This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.*

- n. **Recall Of Products, Work Or Impaired Property**

  > *Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:*
  >
  > *(1)   "Your product";*
  >
  > *(2)   "Your work"; or*
  >
  > *(3)   "Impaired property";*
  >
  > *if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy o r dangerous condition in it.*

50. The Policy includes the **AMENDMENT OF INSURED CONTRACT DEFINITION** Endorsement, Form CG 24 26 (10/16), which sets forth the definition of an "insured contract" as follows, in part:

    > *This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART*

*The definition of "insured contract" in the Definitions section is replaced by the following: "Insured contract" means:*

*f.        That part of any other written agreement, signed by both parties prior to the date of the "occurrence", pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of that party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused by your negligence or the negligence of those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.*

*\*\*\**

51. Based on the forgoing, to the extent that the damages alleged in the Underlying Actions are not for "property damage" caused by an "occurrence," there is no coverage for such damages under the Policy for the Underlying Actions.

52. Based on the foregoing, to the extent that GIM did not enter into an "insured contract" as defined in the Policy, coverage is excluded for any damages alleged in the Underlying Actions that GIM is obligated to pay by reason of the assumption of liability in a contract or agreement pursuant to Exclusion (b) above.

53. The Underlying Actions all allege that work performed by GIM caused or contributed to the property damage being claimed in the Lawsuits. To the extent that the "property damage" alleged falls within any or all of the Business Risk Exclusions, (j)(5), (j)(6), (l), (m), or (n) cited above, these Exclusions preclude coverage for the Underlying Actions.

54. The Policy also includes by the following **EXCLUSION – DESIGNATED WORK** Endorsement, Form CG 21 34 (01/87), which provides:

***EXCLUSION – DESIGNATED WORK***

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*
*PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART*

*This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.*

*SCHEDULE*

*(If no entry appears below, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)*

***Description of your work:***

*Any exterior work or exterior project if the work or the project involves exterior work about 2 stories or 30 feet, whichever is closer to the ground or any project that involves adding one or more stories to an existing structure, if performed by any insured or by contractors on the insured's behalf; or*

*Any work or operations arising from any insured when the insured is not acting in the capacity of a General Contractor and working directly for the Owner of the project; or*

*Any insured's own labor. However, insured's own labor does not include the insured's supervisory personnel acting solely in a supervisory capacity; or*

*Any project where separate (Project Specific) insurance was purchased or placed.*

55.     Based on the foregoing, to the extent the alleged property damage arose out of GIM performing any work while not acting in the capacity of a General Contractor while working directly for the Owner of the Project or GIM's own labor, there is no coverage for the Underlying Actions pursuant to the Designated Work Exclusion.

56.     The Policy also includes the following endorsement **EXCLUSION – DESIGNATED ONGOING OPERATIONS** Endorsement, Form CG 21 53 01 96:

*EXCLUSION – DESIGNATED ONGOING OPERATIONS*

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*The following exclusion is added to paragraph **2.**,  Exclusions of **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY (SECTION I –
COVERAGES):***

*This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.*

*Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location"
is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location."*

> *For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.*
>
> *(If no entry appears below, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)*
>
> **SCHEDULE**
>
> ***Description of Designated Ongoing Operation(s):***
>
> *Any exterior work or exterior project if the work or the project involves exterior work about 2 stories or 30 feet, whichever is closer to the ground or any project that involves adding one or more stories to an existing structure, if performed by any insured or by contractors on the insured's behalf; or*
>
> *Any work or operations arising from any insured when the insured is not acting in the capacity of a General Contractor and working directly for the Owner of the project; or*
>
> *Any insured's own labor. However, insured's own labor does not include the insured's supervisory personnel acting solely in a supervisory capacity; or*
>
> *Any project where separate (Project Specific) insurance was purchased or placed.*
>
> ***Specified Location (If Applicable):***
>
> *All locations.*

57. To the extent that the "property damage" alleged in the Underlying Actions arose out of GIM performing any work while not acting in the capacity of a General Contractor while working directly for the Owner of the Project or GIM's own labor, this Exclusion precludes coverage for the Underlying Actions.

58. The Policy also includes the following **MOLD, MILDEW, FUNGUS OR BACTERIA EXCLUSION** Endorsement, form CGL 365 (10/15):

> ***MOLD, MILDEW, FUNGUS OR BACTERIA EXCLUSION***
>
> *In consideration of the premium for which this policy is issued, this insurance does not apply to, and we are not obligated to defend, any loss, demand, claim, cost, expense, "suit," "bodily injury," "property damage," "personal and advertising injury," medical payments, liability or other proceeding that in any way, in whole or in part, arises out of, relates to, or results from mold, mildew, fungus or bacteria.*
>
> *As used in this exclusion, mold, mildew, fungus or bacteria include:*

> *(1) The actual, alleged or threatened exposure to, consumption, ingestion of, inhalation of, contact with, absorption of, existence of, or presence of, mold, mildew, fungus or bacteria in any manner or form whatsoever, including without limitation mold, mildew, fungus, bacteria, yeast, spores, microbes, mycotoxins, endotoxins, or other pathogens, as well as any odors, particulates or by-products of any of the foregoing, either directly or indirectly;*
>
> *(2) The actual or alleged failure to warn, advise or instruct regarding mold, mildew, fungus or bacteria in any manner or form whatsoever; or*
>
> *(3) The actual or alleged failure to prevent exposure to mold, mildew, fungus or bacteria in any manner or form whatsoever.*
>
> *This exclusion applies regardless of whether any other cause, event, material, product or condition, including but not limited to water damage or water intrusion, contributed concurrently or in any sequence to such loss, demand, claim, cost, expense, "suit," "bodily injury," "property damage," "personal and advertising injury," medical payments or liability.*
>
> *This exclusion includes but is not limited to compliance with any request, demand, order, or statutory or regulatory requirement, or any action authorized or required by law, or any loss, cost or expense arising out of or relating to the investigation of, abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, loss of use, diminution in value, loss of market value, or in any way responding to, or assessing the effects of mold, mildew, fungus or bacteria, as well as any costs, fees, expenses, penalties, judgments, fines, or sanctions arising from or relating thereto.*

59. To the extent any "property damage" arising out of, relating to, or resulting from mold, mildew, fungus or bacteria is claimed in the Underlying Actions, the Exclusion precludes coverage for such damages.

60. The Policy also contains other provisions that may further preclude coverage to GIM in connection with the Underlying Actions.

### COUNT I– DECLARATORY JUDGMENT
### Declaration That Mt. Hawley Has No Obligation To
### Defend GIM In The Underlying Actions

61. Plaintiff repeats, re-alleges, and restates each and every allegation contained in paragraphs "1" through "60", inclusive, with the same force and effect as if fully set forth herein.

62. For each of the reasons identified above, the allegations in the Underlying Actions do not articulate a claim that is covered under the Policy, as the alleged claims are not within the

Policy's Insuring Agreement and/or the claims are excluded from coverage and/or GIM has not satisfied conditions precedent to coverage.

63. Subject to Mt. Hawley's disclaimer of coverage, dated October 29, 2025, the terms of which are incorporated by reference in their entirety, Mt. Hawley has continued providing GIM with a defense of the Underlying Actions at Mt. Hawley's expense pending the determination of the parties' rights and obligations under the Policy in the instant Declaratory Judgment action.

64. Mt. Hawley contends that by virtue of the foregoing, it has no duty to defend GIM with respect to the Underlying Actions under the Policy.

65. There exists a present, justiciable controversy between the parties concerning whether Mt. Hawley owes a duty to defend GIM in the Underlying Actions under the Policy.

66. Mt. Hawley seeks, and is entitled to, a declaration that it owes no duty to defend GIM in connection with the Underlying Actions under the Policy.

### COUNT II– DECLARATORY JUDGMENT
### Declaration That Mt. Hawley Has No Obligation To Indemnify GIM In The Underlying Actions

67. Plaintiff repeats, re-alleges, and restates each and every allegation contained in paragraphs "1" through "66", inclusive, with the same force and effect as if fully set forth herein.

68. For each of the reasons identified above, the allegations in the Underlying Actions do not articulate a claim that is covered under the Policy, as the alleged claims are not within the Policy's Insuring Agreement and/or the claims are excluded from coverage and/or GIM has not satisfied conditions precedent to coverage.

69. Mt. Hawley contends that by virtue of the foregoing, it has no duty to indemnify GIM with respect to the Underlying Actions under the Policy.

70. There exists a present, justiciable controversy between the parties concerning whether Mt. Hawley owes a duty to indemnify GIM in the Underlying Actions under the Policy.

71. Mt. Hawley seeks, and is entitled to, a declaration that it owes no duty to indemnify GIM in connection with the Underlying Actions under the Policy.

WHEREFORE, Plaintiff Mt. Hawley seeks the following relief against Defendant GIM:

(1) On Count I, a declaration that Plaintiff is not obligated to defend GIM in connection with the Underlying Actions under the Policy;

(2) On Count II, a declaration that Plaintiff is not obligated to indemnify GIM in connection with the Underlying Actions under the Policy; and

(3) Granting such other relief as the Court deems just and equitable.

Dated: New York, New York
October 30, 2025

FLEISCHNER POTASH LLP

By: ___/s/ Eric Leibowitz_____
Eric Leibowitz, Esq.  (EL-5488)
*Attorneys for Plaintiff,*
*MT. HAWLEY INSURANCE COMPANY*
45 Broadway, 23rd Floor
New York, New York 10006
T: (646) 520-4200
Email: eleibowitz@fp.law
Our File No.: 394-24960